h CANNIZZARO, JR., J.
At issue in this appeal is whether the trial court properly applied the law regarding a judgment notwithstanding the verdict (JNOV) in reversing a jury verdict and rendering separate judgments in favor of the plaintiff on the issues of liability and damages.
FACTS
This case arises from a vehicular accident that occurred on August 4, 1998, at the intersection of Veterans Highway and *683 Clearview Parkway in Jefferson Parish. At the intersection, westbound Veterans Highway consists of five travel lanes. The two lanes closest to the median are utilized to make a left turn onto Clearview Parkway. Todd Guidry, who was driving a Nissan Pathfinder in the inside left turn lane, and Andy Leon, who was driving a tractor trailer in the outside left turn lane, collided when each attempted to make a left turn from Veterans Highway onto southbound Clearview Parkway. At the time, the plaintiff, |PCindi Adams [1], was a front seat passenger in the Nissan Pathfinder and sustained injuries in the accident.
After the accident, Adams filed a petition for damages, naming as defendants, Leon, his employer, and the owner of the tractor trailer, Crescent Shippers of Louisiana, Inc., and its insurer, Voyager Indemnity Insurance Company. Following a trial, the jury returned a verdict finding Leon was not negligent in causing the accident. In accordance with the jury’s verdict, the trial court rendered a judgment dismissing the case. The plaintiff subsequently filed a motion for judgment notwithstanding the verdict (“JNOV”) or, alternatively, for a new trial. On January 10, 2001, the trial court rendered a JNOV in favor of the plaintiff, reversed the jury’s verdict, and allocated fault at thirty-five percent (35%) to Guidry and sixty-five (65%) percent to Leon. The defendants timely filed a devolutive appeal from that judgment. Meanwhile, on March 7, 2001, the trial judge rendered another JNOV, on the issue of damages, awarding the plaintiff $450,000.00 for general damages, $125,994.38 for medical expenses, $50,000.00 for past wages and $400,000.00 for future wages, in addition to interest from the date of judicial demand. The defendants also appealed from that judgment. The plaintiff has answered the appeals, arguing the trial court erred in allocating fault to Guidry.
| .¡APPLICABLE LAW
La.Code of Civ. Proc. art. 1811 authorizes a trial court to grant a JNOV on either the issue of liability or damages or both. Robinson v. Fontenot, 2002-0704, 2002-0733 (La.2/7/03), 837 So.2d 1280. Although article 1811 does not specify the grounds on which a trial judge may grant a JNOV, the Louisiana Supreme Court in Joseph v. Broussard Mill, 2000-0628, p. 1 (La.10/30/00), 772 So.2d 94, reiterated the criteria it set forth in Scott v. Hospital Serv. Dist. No. 1, 496 So.2d 270 (La.1986), in determining when a JNOV is proper. As enunciated in Scott, a JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of the evidence for the mover. The motion should be denied if the evidence opposed to the motion is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. Scott, 496 So.2d at 274. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Anderson v. New Orleans Pub. Serv. Inc., 583 So.2d 829, 832 (La.1991). This rigorous standard is based upon the principle that “[w]hen there is a jury, the jury is the trier of *684 fact.” Scott, 496 So.2d at 273; Joseph, 2000-0628, pp. 4-5, 772 So.2d at 99.
|4In reviewing a JNOV, the appellate court must first determine if the trial judge erred in granting the JNOV. This is done by using the criteria set forth in Scott just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable persons in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated. Anderson, 583 So.2d at 832; Joseph, 2000-0628, p. 5, 772 So.2d at 99.
TRIAL TESTIMONY REGARDING THE ACCIDENT
Leon testified at trial that at the time of the accident he was operating his tractor trailer[2] without a load. As he approached the intersection of Veterans Highway and Clearview Parkway, the traffic signal facing him was red. Because several cars ahead of him were stopped for the light, he had to stop a substantial distance from the intersection. Leon activated his left turn signal and waited through two or three cycles of the traffic fight before he reached the area of the intersection where he could make his turn. His left turn signal remained on the entire time. After slowly moving forward and reaching the area to make the left turn, Leon waited for the cars ahead of him to clear out on Clear-view Parkway before he commenced his turn; he estimated that it took twenty to thirty seconds to do so. Before beginning to turn, he checked his mirrors and saw a car to his rear in | Rthe left turn lane adjacent to his lane (the inside left turn lane). The car flashed its headlights on and off, which Leon interpreted as an indication that it was safe to turn. He slowly moved forward, angling the tractor trailer toward the curb ahead of him. As Leon proceeded to turn, he again checked his mirrors and immediately felt a “bump.” The mid section of the left side of the trailer, which crossed over into the inside left turn lane, struck the front passenger corner of the Nissan Pathfinder. Leon estimated that he was moving about five miles per hour when he made the turn. He explained that he did not accelerate in making the turn, but rather released his clutch to allow his tractor cab to roll forward into the turn. Leon also testified that he had made that same turn on other occasions and was well aware that his trailer would cross into the inside left turn lane while making the turn. On cross examination, he acknowledged that he had crossed over into Gui-dry’s lane.
Guidry[3], on the other hand, testified that when he entered the inside left turn lane on Veterans Highway, the fight had just turned green. He pulled up alongside Leon’s tractor trailer, which was in the adjacent outside left turn lane. As Guidry was making his left turn, Leon was turning left onto Clearview Parkway at the same time. Moments after making the turn, Guidry noticed that the tractor trailer was coming into his lane. He slammed on the brake, blew the horn, and “was hit all in a matter of less than two seconds.” However, on cross examination, when defense counsel questioned Guidry about the acei- *685 dent, using a diagram of the intersection of Veterans Highway and Clearview Park-view, he testified as follows:
Q. Which lane were you in as you approached that intersection of Veterans and Clearview?
IrA. Here, inside left-hand turn lane.
Q. All right. Left-hand turn lane. All right. And, when you got to that area, in fact, right where you see this box, were there any vehicles next to you?
A. Tractor-trailer.
Q. What part of the tractor-trailer was next to you?
A. The trailer.
Q. So, the tractor was already pulled out further and the trailer was sticking out by you?
A. Yes, because the light had turned green.
Q. And, the tractor-trailer had [its] turn signal on, right?
A. Yes.
Q. And, you knew he was turning, right?
A. Yes.
Q And, you knew that the trailer could have dragged into this lane, right?
A. Yes.
Q. Okay. And, by knowing that, you turned with the tractor-trailer; is that right?
A. Well, yes. I was making the turn.
Q. You, didn’t sit here and wait for him to go ahead and straightened out, you went ahead and turned along beside him, knowing that his trailer was going to cross into your lane; is that right?
A. I didn’t know that his trailer was going to come into my lane.
|7Q. You said that you were familiar with the fact that trailers drag into the lane next to it. Is there a lane over here—
MR. BRUNO: Objection, Your honor— add that one word “sometimes.” That’s not what he asked him—
THE COURT: I’m going to sustain the objection. You need to add the word “sometimes.”
FURTHER EXAMINATION BY MR. JONES:
Q. Was there a lane over here that the trailer could drag into?
A. No, there wasn’t.
Q. There was a lane here that the trailer could drag into, right?
A. Yes, there was.,
Q. That was the lane you were in, right?
A. I was. Yes, I was in that lane. I did make that turn.
Q. And, the whole time, or at least on the onset, when you began to make the turn and the truck did have his turn signal on?
A. From my knowledge, yes.
Q. Would you agree that if you had sat here and waited for the truck to straighten out in this lane, the accident would never have happened?
A. Sure.
The plaintiff, too, testified that Leon’s tractor trailer was farther ahead of the Nissan Pathfinder in the adjacent lane when Guidry entered his left turn lane and commenced his turn. She corroborated both Leon’s and Guidry’s testimony that Leon’s trailer had crossed into Guidry’s lane while making the left turn and struck lathe front passenger corner of the Nissan Pathfinder. However, the plaintiff admitted on cross examination that after the impact she noticed that a portion of the tractor’s cab was in Guidry’s lane. When asked by defense counsel whether the *686 tractor cab had crossed into Guidry’s lane prior to the impact, she equivocated, testifying as follows:
Q. Okay. You noticed the cab but do you know whether the cab was actually in the lane before impact?
A. Before impact, no.
Q. Okay. Do you recall telling me earlier that if your husband had tried to speed up and go around the truck he would have hit the cab?
A. Yes.
Q. Well, if that’s the case then the cab had to be in the lane before the impact?
MR. BRUNO: Your Honor, objection, argumentative.
THE COURT: I’m going to allow it.
BY MR. JONES:
Q. Right? Do you understand what I’m saying?
A. Yes, I understand what your saying?
Q. Doesn’t that make sense?
A. Yes, it does.
I «DISCUSSION
In granting the JNOV, the trial judge stated in her reasons for judgment that, “[t]he defendant driver admitted to crossing into another lane of traffic and more importantly admitted not watching the rear of the truck in his mirrors as he made his turn. He was clearly at fault.” After reviewing the evidence in the record and applying the criteria set forth in Scott, supra, we find the trial court erred in granting the JNOV. Clearly, reasonable persons could certainly differ on the question of whether Leon’s actions were negligent under the circumstances.
Negligence is defined in Black’s Law Dictionary 1032 (6th ed.1991) as:
The omission to do something which a reasonable man, guided by those ordinary considerations which ordinarily regulate human affairs, would do, or the doing of something which a reasonable and prudent man would not do.
Negligence is the failure to use such care as a reasonably prudent and careful person would use under similar circumstances; it is the doing of some act which a person of ordinary prudence would not have done under similar circumstances or failure to do what a person of ordinary prudence would have done under similar circumstances.
Although the trial judge found that Leon failed to watch the rear of his truck in his mirrors as he turned, Leon’s testimony that he checked his mirrors twice, immediately before proceeding to turn and again as he released his clutch to roll forward into the turn, was never controverted. Considering the fact that the accident happened immediately upon the drivers commencing their turns — Guidry and Leon both testified that it occurred almost instantaneously — the evidence, when viewed in its entirety, does not support the trial court’s conclusion that Leon |infailed to watch the rear of his truck in making the turn. Whereas the jury was free to determine the credibility of the witnesses, the trial court deciding a JNOV was not. Thus, the jury could have believed Leon’s testimony and concluded that he exercised reasonable care under the circumstances in executing his turn. Leon activated his left turn signal well in advance of the turn. He had been in the left turn lane for a few minutes, waiting through several cycles of the traffic light and for Clearview Parkway traffic to clear in order to safely turn. Leon checked his mirrors and saw the vehicle behind him flash its headlights, which indicated to him that it was safe to *687 turn. Also, he never accelerated while making the turn.
Furthermore, based on the evidence, the jury could have determined that Guidry, rather than Leon, was negligent in causing the accident. Unlike Leon, who waited in the turn lane through several cycles of the traffic light before commencing his left turn, Guidry entered the turn lane while the traffic fight was green and immediately proceeded to turn. The jury could have concluded that Guidry, an experienced truck driver, acted hastily under the circumstances, considering his own testimony that he was fully aware that Leon’s tractor trailer could travel into his turn lane while making the turn, yet he chose to turn beside Leon, simultaneously, knowing that if he had waited and allowed Leon to complete his turn the accident would not have occurred.
Finally, from the testimony regarding the proximity of the vehicles to each other in the adjacent turn lanes and the plaintiffs admission that a portion of the tractor’s cab was in Guidry’s turn lane at impact, the jury could have concluded luthat Leon had commenced turning before Guidry and that Guidry should have seen the tractor cab crossing into his lane and stopped to allow Leon to complete the turn before commencing his own left turn.
In view of the evidence in the record, we cannot say that the facts and inferences point so strongly in favor of the plaintiff that reasonable persons could not reach any conclusion other than that Leon was negligent in the accident of August 4,1998. Certainly, the jury reasonably could have concluded that Guidry could have avoided the accident had he exercised reasonable care under the circumstances.
CONCLUSION
Accordingly, for the reasons stated herein, the judgments of the trial court granting the judgments notwithstanding the verdict on the issues of liability and damages are reversed. The jury’s verdict as to liability is reinstated.
REVERSED; JURY VERDICT REINSTATED
ARMSTRONG, J., dissents with reasons.

. Cindi Adams married Todd Guidry subsequent to the accident. The trial transcript and judgments refer to the plaintiff as Cindi Adams Guidry.

. The trailer alone measured forty eight feet in length.

. Guidry testified that he was employed as a milkman and drove a delivery truck for Barbe Dairy.