# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-149

**JYI HEBERT STEEN, ET AL.**

**VERSUS**

**STATE OF LOUISIANA
THROUGH THE DEPARTMENT OF
TRANSPORTATION AND DEVELOPMENT**

************

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT,
PARISH OF IBERIA, NO. 97013,
HONORABLE EDWARD M. LEONARD, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

**JNOV REVERSED; JURY VERDICT AND
FEBRUARY 20, 2004 JUDGMENT REINSTATED.**

**Danial C. Vidrine**
**Attorney at Law**
**12445 Parkvilla Avenue**
**Baton Rouge, Louisiana 70816**
**(225) 752-4520**
**Counsel for Plaintiffs/Appellees:**
    **Jyi H. Steen**
    **Christoper Allen Hebert**

**Tracy P. Curtis**
**Perret, Doise, APLC**
**Post Office Drawer 3408**
**Lafayette, Louisiana 70502-3408**
**(337) 262-9000**
**Counsel for Defendant/Appellant:**
    **State of Louisiana, Department of Transportation and Development**

**William Stafford Neblett**
**Neblett, Beard & Arsenault**
**Post Office Box 1190**
**Alexandria, Louisiana 71309-1190**
**(318) 487-9874**
**Counsel for Plaintiffs/Appellees:**
    **Jyi H. Steen**
    **Christopher Allen Hebert**

SULLIVAN, Judge.

The State, through the Department of Transportation and Development (DOTD), appeals the trial court's grant of a judgment notwithstanding the verdict (JNOV) in this matter. For the following reasons, we reverse the trial court's ruling and reinstate the verdict rendered by the jury.

## *Facts*

On November 28, 2000, Paula Fournier drove, with her mother as a passenger, from Church Point to New Iberia to pick up her brother at the Iberia Parish Jail. The jail is located off U.S. Highway 90 in Iberia Parish. When Ms. Fournier left the jail, she traveled east on the service road which is parallel with Highway 90. Highway 90 runs east and west. The service road intersects with Louisiana Highway 675, a bidirectional, two-lane roadway which runs north and south. East of this intersection Highway 675 intersects with Highway 90. Highway 675 is a two-lane road which widens to four lanes prior to its intersection with the service road and Highway 90. This four-lane section is divided by a median. The intersection of the service road at Highway 675 is controlled by a stop sign. Ms. Fournier stopped at the stop sign, turned left into the southbound lane of Highway 675 toward the eastbound lane of Highway 90, and began traveling north in the southbound lane. When she approached Highway 90, Ms. Fournier attempted to diagonally cross the eastbound lane of that highway to reach the northbound lane of Highway 675. During this maneuver, a vehicle driven by Patricia Richard, who was traveling east on Highway 90, collided with Ms. Fournier's vehicle. Ms. Richard suffered injuries which resulted in her death.

Ms. Richard's children filed suit against DOTD, alleging that the intersection of the service road and Highway 675 is unreasonably dangerous. The matter was

tried before a jury from February 2 through February 5, 2004. The jury determined that the intersection was not unreasonably dangerous. Ms. Richard's children filed a motion for JNOV which the trial court granted. DOTD appeals.

### Judgment Notwithstanding the Verdict

Louisiana Code of Civil Procedure Article 1811 governs motions for JNOV. A JNOV should be granted "only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover." *Anderson v. New Orleans Pub. Serv., Inc.*, 583 So.2d 829, 832 (La.1991). If the motion is opposed with evidence "which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied." *Id.* The credibility of the witnesses is not to be considered by the reviewing court, and "all reasonable inferences or factual questions should be resolved in favor of the non-moving party." *Id.*

On appeal, the reviewing court must use the same criteria to determine if the motion was properly granted. *Joseph v. Broussard Rice Mill, Inc.*, 00-628 (La. 10/30/00), 772 So.2d 94. In doing so, all of the evidence must be considered in the light most favorable to the party opposing the motion. If it is determined that the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on the issue, the JNOV was properly granted. *Id.* "If, however, reasonable persons in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion. . . ." *Id.* at 99.

2

## *Discussion*

A plaintiff may proceed against DOTD under either a theory of negligence or a theory of strict liability. *Netecke v. State, through DOTD*, 98-1182, 98-1197 (La. 10/19/99), 747 So.2d 489. The plaintiff's burden of proof is the same under either theory; he must prove:

> (1) DOTD had custody of the thing that caused the plaintiff's injuries or damages;
>
> (2) the thing was defective because it had a condition that created an unreasonable risk of harm;
>
> (3) DOTD had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time; and
>
> (4) the defect in the thing was a cause-in-fact of the plaintiff's injuries.

*Id.* at 494. The plaintiff's failure to establish any one of these criteria is fatal to his case. *Id.*

Plaintiffs complain that DOTD's failure to place one-way, do not enter, and wrong-way signs at the service road's intersection with Highway 675 was a defect which created an unreasonable risk of harm. It is undisputed that DOTD had custody of this intersection. DOTD has a statutory duty to "study, administer, construct, improve, maintain, repair, and regulate" the use of public highways and roads, La.R.S. 48:21(A), and is "required to keep the state's highways in a reasonably safe condition." *Lee v. State, through Dep't of Transp. and Dev.*, 97-350, p. 4 (La. 10/21/97), 701 So.2d 676, 678. "This includes a duty with regard to signs and traffic signals along the road," which requires DOTD to "exercise a high degree of care for the safety of the motoring public"; however, these duties do not make DOTD a guarantor of the safety of all travelers. *Id.* DOTD cannot "be held responsible for all injuries resulting from any risk posed by the roadway or its appurtenances, only those

3

caused by an unreasonable risk of harm to others." *Id.* The facts and circumstances of each case determine whether DOTD breached this duty. *Id.*

In *Netecke,* 747 So.2d at 498 (citations omitted) (emphasis added), the supreme court addressed the unreasonable risk component of a plaintiff's burden of proof in an action against DOTD, explaining:

> The unreasonable risk of harm criterion is not a simple rule of law. Rather, it is a criterion established by this Court to facilitate the judicial process required by our Code. As such, it becomes the decision maker's duty to decide which risks are encompassed by the codal obligations from the standpoint of justice and social utility.
>
> In attempting to define the test, we have described the unreasonable risk of harm criterion as serving as a guide utilized by the decision maker in balancing the likelihood and magnitude of harm against the social utility of the thing. We have cautioned, however, that such a balancing test does not lend itself well to neat, mathematical formulations. In addition, the decision maker must consider a broad range of social and economic factors, including the cost to the defendant of avoiding the harm, as well as the risk and the social utility of the party's conduct at the time of the accident. In reaching an intelligent and responsible determination, the decision maker must carefully consider all the circumstances surrounding the particular accident under review to determine whether DOTD's legal duty encompassed the risk which caused the plaintiff's injuries and damages and was intended to protect this plaintiff from this type of harm arising in this manner. **The imperfection or irregularity must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances.**

Plaintiffs presented the testimony of James Clary, a civil engineer whose work includes traffic and highway engineering, to prove that the service road/Highway 675 intersection created an unreasonable risk of harm. Mr. Clary was the only expert who testified at trial. He testified that DOTD should have installed one-way, do not enter, and wrong-way signs at the intersection of the service road and Highway 675 and that without these signs the intersection was unreasonably dangerous because there was

4

nothing to put a driver on notice that she turned the wrong way and should stop at Highway 90.

In Mr. Clary's opinion, placement of the one-way and do not enter signs were mandated by the Louisiana Manual on Uniform Traffic Control Devices (LMUTCD); placement of wrong-way signs was not mandatory. He testified that the Millennium Edition of the LMUTCD mandated placement of do not enter signs at this intersection. Counsel for DOTD pointed out on cross-examination that the Millennium Edition is dated December 2000; therefore, it was not in effect at the time of this accident.

With regard to the one-way signs, Mr. Clary based his opinion on this provision of the 1949 LMUTCD: "The One Way sign shall be used to indicate streets upon which traffic is allowed to travel in one direction only." He testified that the provision's use of the term "shall" mandated placement of a one-way sign at the intersection, pointing to the 1971 edition of the LMUTCD which provides in part:

> In the Manual sections dealing with the design and application of traffic control devices, the words "shall," "should" and "may" are used to describe specific conditions concerning these devices. To clarify the meanings intended by this Manual by the use of these words the following definitions apply:
>
> 1.    SHALL–A *mandatory* condition. Where certain requirements in the design or application of the device are described within the "shall" stipulation, it is mandatory when an installation is made that these requirements be met.

Mr. Fred Simon testified on behalf of DOTD. He is the District Traffic Operations Manager for the district which includes this intersection. He is a traffic engineer and handles traffic controls daily. At the time of the trial, he had been employed by DOTD for more than thirty years and had control of signing this intersection for twenty-five years. Mr. Simon explained that this intersection and its

5

signing were installed in the early to mid 1960s. He further explained that the LMUTCD and the actual function of this stretch of the service road dictate the applicable traffic controls.

Mr. Simon was cross-examined regarding the meaning of the term "shall" and its use in the LMUTCD. He testified that "shall," as used in the LMUTCD is seen as mandatory by some, but not others, who use the Manual. He agreed with Plaintiffs' counsel that "shall" means you have to do something but qualified his agreement, stating: "If qualifying requirements are satisfied. . . . If they are not the shall condition has stipulations attached to it." Mr. Simon's comments are better understood when the following provision of the 1971 edition of the LMUTCD is also considered:

> The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. Thus, *while this Manual provides standards for design and application of traffic control devices, the Manual is not a substitute for engineering judgment. It is the intent that the provisions of this Manual be standards for traffic control devices installation, but not a legal requirement for installation.*

(Emphasis added). This provision immediately precedes the definition section where "shall" is defined. Even if the 1971 LMUTCD's use of the term "shall" is considered to mandate placement of a one-way sign at this intersection, this alone is insufficient to satisfy Plaintiffs' burden of proof. At the time of this accident, La.R.S. 9:2800(D) provided that DOTD's failure to comply with the requirements of its manual is not negligence per se. *See also Vervik v. State, Dep't of Highways*, 302 So.2d 895 (La.1974).

DOTD urges that Plaintiffs failed to establish that the LMUTCD mandates installation of one-way signs at this intersection. Figures 2-3 and 2-3(a) of the 1988

edition of the LMUTCD depict intersections similar to the service road/Highway 675 intersection. Mr. Clary identified Figure 2-3, labeled "Location of one-way and turn prohibition signs," as support for his opinion that a one-way sign was mandatory at this intersection. This figure depicts a divided four-lane road intersected by a two-lane road. It shows stop signs and one-way signs for traffic entering the intersection and for traffic within the median of the intersection. Mr. Clary agreed that the median between the north and southbound lanes of Highway 675 were not wide enough for stop signs.

DOTD contends that Figure 2-3(a) provides an option to the placement of signs depicted in Figure 2-3. Figure 2-3(a) is labeled "Alternate one way signing for divided highways." The phrase "MEDIAN LESS THAN 30'" appears at the top right of the page. The medians in the two diagrams shown on this page are noticeably smaller than the median depicted in Figure 2-3. The first diagram in Figure 2-3(a) represents an intersection like the service road/Highway 675 intersection. The term "OPTIONAL" appears after the one-way signs depicted on the diagram. Mr. Clary agreed that Highway 675 is not a divided highway and that standards provided in the LMUTCD can be modified by Options, depending on the language used. He also testified that he did not measure the median but, based on his review of the intersection's design plans, believed it was about thirty feet wide. Hence, DOTD's argument that Plaintiffs did not prove the placement of a one-way at this intersection was mandatory.

DOTD also argues that, even if the jury concluded that the absence of one-way, do not enter, and/or wrong-way signs at the intersection was a defect which rendered it unreasonably dangerous, it was reasonable for the jury to conclude that the defect

7

was not the cause-in-fact of the accident. It urges that there were visual clues at the intersection which informed Ms. Fournier of the proper route to take at the intersection and that her failure to heed these clues and to respond to them appropriately was the cause of the accident, not the absence of a one-way sign.

In *Lasyone v. Kansas City Southern Railroad*, 00-2628, p. 9 (La. 4/3/01), 786 So.2d 682, 691 (citations omitted), the supreme court reviewed the concept of cause-in-fact, stating:

> A party's conduct is a cause-in-fact of the harm if it was a substantial factor in bringing about the harm. For example, the act is a cause-in-fact in bringing about the injury when the harm would not have occurred without it. While a party's conduct does not have to be the sole cause of the harm, it is a necessary antecedent essential to an assessment of liability. Whether an action is the cause-in-fact of the harm is essentially a factual determination that is usually left for the factfinder.

Ms. Fournier testified that she was confused when she left the jail and that she never realized she was going the wrong way. State Trooper Michael Labiche, the officer who investigated the accident, testified that Ms. Fournier told him she was confused and asked if it was okay to say she did not remember what happened before the accident. He further testified that, based on his investigation, he believed Ms. Fournier was driving north in the right lane of the southbound lanes of Highway 675 and thought she was driving on a two-lane highway as she approached Highway 90. He explained that the physical evidence at the accident scene was consistent with Ms. Fournier having attempted to correct her error and get to the northbound lane of Highway 675 by crossing Highway 90. Neil McDonald witnessed the accident from north of Highway 90. He testified that he was traveling in the southbound lane of Highway 675 when he noticed Ms. Fournier's vehicle traveling in his lane of travel in the wrong direction. He testified that her vehicle then "turned to get to the correct

8

lane of [Highway 675] using [Highway 90] to cross over at a sharp forty-five (45)." There is no evidence that Ms. Fournier attempted to determine whether it was safe for her to make this maneuver before she did.

Neither Ms. Fournier's mother nor her brother testified at the trial, but extracts from their depositions were read to the jury and introduced into evidence. Barbara Fontenot, Ms. Fournier's mother, essentially stated that she did not recall the events surrounding the accident. However, she did state that they were not lost when the accident occurred, that Ms. Fournier is generally a safe driver and was driving safely that day, and that there had not been an argument among them before the accident. The last comment referenced a statement which indicated that the occupants of Ms. Fournier's truck were arguing about how to get back to Church Point. Darrell Ledee, Ms. Fournier's brother, invoked his rights under the Fifth Amendment to the United States Constitution and refused to testify when he was deposed.

Mr. Clary agreed that Ms. Fournier was obligated to look both ways when she stopped at the intersection's stop sign, observing that drivers are "supposed to keep a proper account at all times." He acknowledged that nothing obscured her view of Highway 90 and Highway 675. He further agreed that the intersection and adjacent roadways provided Ms. Fournier with visual clues on where to go and not to go, including: the intersection with the median; yellow-painted lines adjacent to the curbs of the median immediately in front of her; the back of an opposing stop sign; and white dashed lines between the southbound lanes of Highway 675. He also acknowledged that, when Ms. Fournier turned onto Highway 675 and drove toward Highway 90, she was faced with the backs of two oversized stop signs and a wrong-way sign installed on the back of one those stop signs where Highway 675's

9

southbound lanes intersect with Highway 90 east and that, if she had looked to her right, she would have seen two oversized stop signs facing the northbound lanes of Highway 675 at their intersection with Highway 90 east, as well as red flashing beacons facing the northbound lanes.

The evidence also established that 475 feet south of the intersection Highway 675 was an undivided two-lane, bidirectional highway and that Highway 675's intersection with Highway 90 was approximately the same distance, 450 feet from the service road. One of the photographs taken at the intersection depicts the view Ms. Fournier had when she looked to her right, south to Highway 675. Almost immediately south of the intersection is a sign indicating the left lane ends and the roadway becomes two undivided lanes. The jury could have reasonably concluded from this evidence and photograph that Ms. Fournier could have easily seen the configuration of Highway 675 prior to its division by a median for its intersection with the service road and Highway 90 and that was additional information from which she should have determined that the two lanes of traffic immediately in front of her were one-way southbound lanes.

"If a motorist fails to see what he should have seen, then the law charges him with having seen what he should have seen, and the court examines his subsequent conduct on the premise that he did see what he should have seen." *Sanchez Fernandez v. Gen. Motors Corp.*, 491 So.2d 633, 636-37 (La.1986).

Ms. Fournier was faced with an intersection similar to intersections Louisiana drivers regularly encounter. Resolving all reasonable inferences and factual questions in favor of DOTD, we find that reasonable and fair-minded men could conclude that the absence of one-way, do not enter, and wrong-way signs at the service

10

road/Highway 675 intersection did not constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. This is especially true in light of the unobscured, visual information available to a driver at this intersection. Based on this visual information, the jury could have concluded that Ms. Fournier should have realized Highway 675 was four lanes separated by a median at its intersection with the service road and that she had to cross the southbound lanes of Highway 675 to access the northbound lanes.

The jury may have also reasonably determined that after Ms. Fournier turned onto Highway 675 she should have realized she was traveling the wrong way, that she should have stopped at the intersection of Highway 675 south and Highway 90 east, or taken other precautions to insure she could safely cross Highway 90 east, before attempting to correct her error, that her failure to stop at the intersection, or take another precaution, was negligent, and that her negligence alone caused the accident.

Accordingly, we find that the trial court erred in granting the JNOV.

### *Disposition*

For these reasons, the trial court's August 26, 2004 judgment granting JNOV in favor of Plaintiffs is reversed. The original judgment dated February 20, 2004, dismissing Plaintiffs' suit with prejudice is hereby reinstated. All costs associated with this appeal are assessed to Plaintiffs.

**JNOV REVERSED; JURY VERDICT AND FEBRUARY 20, 2004 JUDGMENT REINSTATED.**