836 So.2d 282 (2002)
Margery MILLS, et al
v.
Henry JAUME, et al.
Henry Jaume,
v.
The Estate of Allen R. Mills, Deceased; Through Administrators/Executors of the Estate of Allen R. Mills, Margery Mills and John Mills.
Nos. 02-CA-668, 02-CA-669.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 2002.
*284 Joseph M. Bruno, David S. Scalia, New Orleans, for Appellants Margery Mills, et al.
James L. Donovan, Jr., Donovan & Lawler, Metairie, for Appellees Johnny Morgan and Allstate Insurance Company.
Edward F. Kohnke, IV, James H. Brown, Jr., Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, for Appellees Henry Jaume, The City of Kenner, and United States Fidelity & Guaranty Company.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and MARION F. EDWARDS.
JAMES L. CANNELLA, Judge.
Plaintiffs, Margery Mills and John Mills, individually and on behalf of their deceased son, Allen Mills, appeal from the dismissal of their suit against Kenner police officer Henry Jaumé (Jaumé), the City of Kenner (Kenner), United States Fidelity & Guaranty Company (USF & G), Johnny R. Morgan (Morgan) and Allstate Insurance Company (Allstate).[1] We amend to include cross-claims and the State and affirm as amended.
On August 24, 1995 at approximately 11:00 p.m., while walking intoxicated across Airline Drive in Kenner near the entrance to the Louis Armstrong International Airport, Allen Mills was struck by two vehicles. He was intoxicated at the time. Jaumé was driving the first car. The second was a pick-up truck driven by Morgan. Allen Mills died at the scene following the second impact.
The Plaintiffs filed suit on July 22, 1996. On August 16, 1996, Jaumé filed a separate suit against the Estate of Allen Mills for his alleged injuries. Morgan and Allstate filed a cross-claim against Jaumé, Kenner, USF & G, and DOTD. Jaumé, Kenner, and USF & G filed a cross claim against Morgan, Allstate, DOTD, and the State. Next, a motion for a jury trial was filed and granted to Morgan and Allstate. In 1997, the two suits were consolidated. Prior to trial, the trial judge granted Kenner's motion to strike the jury as to Kenner *285 and Jaumé, but denied it as to Kenner's excess insurer, USF & G.
Both cases were tried on November 27, 28, 29 and December 1, 2000. Following trial, the jury returned a verdict finding that Morgan was negligent, but his negligence was not the proximate cause of the accident, and that Jaumé was not negligent. On January 8, 2001 the trial judge rendered a verdict that Jaumé was not negligent and dismissed the case against all of the Defendants, except the State, and Jaumé's case against the Estate of Allen Mills. There is no resolution of liability as to the State, or of the cross-claims, which we will address by amending the judgment.
The Plaintiffs filed a motion for Judgment Withstanding the Verdict (JNOV), or New Trial on January 16, 2001. The motions were denied on August 7, 2001.
On appeal, the Plaintiffs assert that the trial judge erred in denying the motion for JNOV and the motion for New Trial.
The Plaintiffs argue that both Jaumé and Morgan were at fault and that their fault proximately caused the accident. They contend that both drivers were speeding and allowed themselves to be distracted from the roadway by the actions of a witness, Keith Traylor (Traylor). The Plaintiffs contend that because Jaumé and Morgan failed to see what they should have seen, they breached their duty of care to Allen Mills, a pedestrian, and that the breach was the proximate cause of the accident.
The Defendants respond that the JNOV and motion for new trial were properly denied because Allen Mills's conduct was the proximate cause of his own injuries. They assert that he failed to take any care for his own safety. He was wearing dark clothing, was intoxicated, crossed the highway slowly, did not look in either direction for on coming traffic, and failed to use a nearby crosswalk or wait for the traffic signal to turn red. Thus, the Defendants assert that the jury and trial judge properly found neither driver liable.

JNOV
La.C.C.P. art. 1811 sets out the procedures for a JNOV. It may be granted on the issue of liability alone, damages or both. C.C.P. art. 1811F. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict, not merely when there is a preponderance of the evidence for the mover. Joseph v. Broussard Rice Mill, Inc., 00-0628, p. 8-9 (La.10/30/00), 772 So.2d 94, 99. In Joseph, the Court explained:
The motion should be denied if there is evidence opposed to the motion, which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that "when there is a jury, the jury is the trier of fact."
Joseph, 00-0628 at p. 8-9, 772 So.2d at 94, 99.
The factors to be considered in weighing the degree of fault assigned by the jury include "whether the conduct resulted from inadvertence or involved awareness of the danger, how great a risk was created by the conduct, the significance of what was sought by the conduct, the capacities of the actors, whether superior or inferior, and any extenuating circumstances which might require the actor *286 to proceed in haste, without proper thought." Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 974 (1985); Joseph, at p. 23, 772 So.2d at 103.
The Plaintiffs assert that Jaumé should have been found negligent. He was familiar with and had seen pedestrians crossing the highway in that area. Although he stated that he did not see Allen Mills until he was in front of the car, he testified that he was "looking in all lanes" and just "didn't see him." They contend that Morgan's negligence was also a proximate cause of the accident. Both he and Jaumé testified that they were distracted from looking at the road by Traylor's car, which was getting ready to enter the highway from the U.S. Park parking lot on the right side of the highway. Morgan's attention to the road was further diverted when he saw Traylor running toward the highway. Furthermore, they argue that a finding of negligence and proximate cause is supported by the testimony of their expert, Oscar Franklin Griffith (Griffith), who concluded that the drivers could have avoided hitting Allen Mills, had they been traveling at the speed limit.
Jaumé testified that he was traveling in the right lane toward the traffic light at the entrance to the airport, after turning onto the highway from a road under the nearby overpass. He estimated his speed at 40 mph. As he approached the traffic light, it was red. He eased off the accelerator, causing the car to slow down. The light turned green before he stopped, so he accelerated. He estimated his speed then as 40 to 45 miles per hour (mph), but did not know for sure. He thought it could have been slower because he had slowed for the red light and accelerated when it turned green. As he passed the traffic light, he approached U.S. Park on the right side. As he was looking ahead, he saw with a glance that a car was moving toward the highway to exit the parking lot. He slowed down in case it pulled in front of him. As his eyes returned to the road, he saw an object close by on the left side of his lane of travel. Jaumé immediately turned his steering wheel hard to the right to avoid striking, what he later realized was, a person. His vehicle left the road and struck a fire hydrant located on the adjacent property. He almost missed Allen Mills, but his left rear tire area knocked him to the ground. As soon as the car came to a stop, Jaumé flipped on the police lights, got out to go to the man, and called for police assistance through his shoulder mike. Jaumé testified that Allen Mills was lying on the ground, but his head and shoulders were bobbing up and down in what appeared to be an effort to get up. Before Jaumé could stop traffic or provide any assistance, Morgan's truck struck the man.
Morgan testified that he was traveling east in the right lane. He drove over the overpass near the airport. He did not see the first accident. As he approached the accident area, his view of the road was diverted to the U.S. Park drive where he saw a car at the end of the driveway and a man running toward the highway. When he looked back at the road, he saw Allen Mills on his hands and knees. Morgan slammed on his brakes, but was unable to miss hitting the fallen man. He told the investigating officer that he was traveling between 45 and 48 mph. Morgan testified that he never saw the man until right before he hit him.
The speed limit in the area was 40 mph. Morgan's expert, Michael Sunseri stated that speed was not an issue because even at 40 mph, Morgan would not have had time to avoid Mills. Jaumé testified his speed was between 40-45 mph, but that he could have been moving slower when he struck Mills since he had slowed down for *287 the red light and only accelerated after it turned green. The distance between the light and the contact point was approximately 125 feet. In addition, the Plaintiff's expert accident reconstruction expert, Griffith, stated that his conclusion that Jaumé was speeding was only a possibility because there was no evidence (other than speculation) that he was traveling over the speed limit.
The uncontradicted evidence shows that the accident occurred around 11:00 p.m. on a section of Airline Drive that had ambient light from adjacent motels, the airport, and other businesses, but was not brightly lit. The evidence further shows that Allen Mills was wearing blue jeans, a black shirt, a black cap and he was legally intoxicated. Traylor testified that the roadway was "very dark." Because it was so dark, he was amazed that Vina Criscuolo (Criscuolo), another witness, was able to see Allen Mills prior to the accident. The investigator's photographs are inconclusive because, although they show a very dark background, the camera flash could account for the intense darkness shown in the pictures.
Criscuolo, an eyewitness who watched Allen Mills cross the highway, also said that he was "hard to see." It was at least one minute before she noticed him crossing in front of her on Airline Drive. Criscuolo was stopped at the traffic light at the entrance to the airport waiting for the green signal to turn left into the airport road. During the time she was stopped, she watched Allen Mills cross the roadway and saw the two cars strike him. Criscuolo testified that he did not use the crosswalk or cross by the traffic signal. He crossed from an area with no sidewalk and near a sign that said "Danger Pedestrians Not Allowed In This Area." Plaintiffs' expert, characterized this area as hostile to pedestrians.
According to Criscuolo, Allen Mills was moving "very slowly" when he walked from the airport side of the road on the north to the south side. She described his pace as "almost slower than leisurely." In addition, she said that he kept his head down as he walked and that he never once looked up to watch for on-coming traffic. Criscuolo said that Allen Mills walked in a straight line and did not stagger. She thought at the time that he was placing himself in jeopardy of being struck because he was hard to see in his dark clothing and was acting totally oblivious to his surroundings. She said that the traffic light was green for oncoming traffic the whole time that he was walking across the traffic lanes. Griffith even noted that had Allen Mills looked up, he would have seen the oncoming headlights in time to step back. Criscuolo was able to observe the entire episode because her signal light was red during these events. Criscuolo thought that the police officer did everything he could to avoid the accident. She estimated that Jaumé's speed was below the speed limit.
Traylor was waiting to drive out onto the Airline Boulevard from U.S. Park when the accident occurred. He was not sure if he saw Allen Mills before the accident, but he did see the police car strike him. Because he was at a dead stop, he did not know if Jaumé was speeding, but waited to pull out because Jaumé was going too fast for Traylor to pull out safely. He did not see Allen Mills until just before the impact when his attention was caught by Jaumé's swerving maneuvers, despite the fact that he had looked left and right preparing to enter the roadway. After Allen Mills was hit, Traylor immediately got out of his car and started to run toward him, who had been knocked to the ground, but was attempting to get up. He also saw the second car strike him before *288 any warning could be given to oncoming traffic.
A third witness, Craig Gomez, was also in the parking lot of the U.S. Park. However, his testimony at trial was inconsistent with his statements at the accident to the investigating officers. Right after the accident, he gave a statement in which he said that he did not see Jaumé's car until it passed in front of him at U.S. Park. He estimated that was only 50 to 60 feet from the impact. He further stated that he did not see Allen Mills until "after the police car struck him." At trial, he testified that he watched the progress of Jaumé's vehicle as it traveled down the highway from the other side of the traffic light at a speed of 50 mph. He also testified that he watched him cross the street.
In the hearing for the JNOV and new trial, the trial judge stated that the case could have gone the other way, with fault being apportioned to the two drivers, and Allen Mills. Thus, he concluded that the standards for the JNOV and the new trial were not met. He provided no reasons for his judgment as to Jaumé and Kenner with the initial judgment, and his conclusions as to those Defendants were not mentioned in the hearing. Nevertheless, after our review we find that the trial judge did not err in denying the JNOV. In this case, the facts and inferences do not point so strongly and overwhelmingly in favor of the Plaintiffs and reasonable persons could arrive at the jury's verdict (a contrary verdict from the one that the Plaintiffs assert should have been rendered).

NEW TRIAL
La. C.C.P. art.1972 provides:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
When a motion for new trial has been filed following a jury trial, the trial judge may evaluate the evidence without favoring either party. Joseph, 00-0628 at pp. 14-15, 772 So.2d at 104. The trial judge may draw its own inferences and conclusions, and evaluate witness credibility to determine whether the jury had erred in giving too much credence to an unreliable witness. Id. The applicable standard of review in such matter is whether the trial court abused its discretion. Joseph, 00-0628 at p. 15, 772 So.2d at 104.
The fact that a determination on a motion for new trial involves judicial discretion, however, does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact-finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence.
*289 Gibson v. Bossier City General Hospital, 594 So.2d 1332, 1336 (La.App. 2nd Cir. 1991). See also: Davis v. Wal-Mart Stores, 00-0445, p. 10, (La. 5th Cir.11/28/00) 774 So.2d 84, 93.
In this case, the Plaintiffs alleged that the new trial should be granted because the verdict was contrary to the evidence. We disagree and find that the verdict was reasonable in light of the conduct of Allen Mills. He exercised no care whatsoever for his own safety. Given the circumstances that faced Morgan as he approached the scene of the first impact, the jury's finding that Morgan's negligence was not a proximate cause of the accident is "supportable by any fair interpretation of the evidence." Thus, we find that the trial judge did not err in denying the motion for new trial as to the jury verdict.
The jury only determined the liability of Morgan, although the negligence of Jaumé also was presented to the jury for it to apportion fault among all possible tortfeasors. The trial judge acknowledged prior to and during trial that he would determine the liability of Jaumé and Kenner. However, he did not give reasons for finding Jaumé not negligent. In the hearing for the JNOV and motion for new trial, the parties appeared to focus only on the jury findings in regard to all of the Defendants. On appeal, the Plaintiffs argue that the trial judge failed to make an independent assessment of Jaumé's fault and simply adopted the jury's findings. Because he was the factfinder as to Kenner and Jaumé, the Plaintiffs are correct that the trial judge should have reached an independent decision. However, it is not clear from the record that he did not do so. Assuming arguendo that he simply adopted the jury's conclusion, we reviewed the evidence de novo and find no basis to grant a new trial. Because the evidence here could have been viewed in two ways, the Plaintiffs did not prove by a preponderance of the evidence that Jaumé was negligent, or that his negligence, if any, proximately caused the accident. Thus, we find that the trial judge did not err in denying the motion for new trial.
Accordingly, we amend the judgment to dismiss the State of Louisiana, and to dismiss the cross-claims filed by Morgan and Allstate and the cross-claim filed by Jaumé, Kenner, and USF & G. The judgment of the trial court is otherwise affirmed as amended. Each party is to bear their own costs of this appeal.
AFFIRMED AS AMENDED.
NOTES
[1] The Parish of Jefferson (Jefferson), the Louisiana Department of Transportation and Development (DOTD), and the State of Louisiana (the State) were also sued. The Parish and DOTD were dismissed prior to trial.