881 So.2d 1277 (2004)
Cindy Phuong Cao and Kevin Khan CAO
v.
Dr. Randall Mark SCHAFFER and Dr. Diem Duy Do.
No. 04-CA-242.
Court of Appeal of Louisiana, Fifth Circuit.
August 31, 2004.
*1278 Bolen, Parker & Brenner, LTD, James A. Bolen, Jr., Donna J. Duplechian, Alexandria, LA, for Appellants.
Wessel & Associates, William F. Wessel, New Orleans, LA, for Appellees.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and JAMES C. GULOTTA, pro tempore.
JAMES L. CANNELLA, Judge.
The Defendants, Dr. Randall Mark Schaffer and his insurer, AAMOS National Insurance Company (AAMOS), appeal from a judgment in a dental malpractice case in favor of the Plaintiff, Mrs. Cao Phuong Cao (Mrs. Cao). We reverse the Judgment Notwithstanding the Verdict (JNOV), deny the new trial request and reinstate the judgment of the jury.
Dr. Diem Do, a newly licensed Vietnamese general dentist, opened his office in *1279 July of 1995. In August, he saw Mrs. Cao, also Vietnamese, for teeth cleaning and cavities. Because of pain in the area of one of her wisdom teeth, Dr. Do referred her to Dr. Schaffer, an oral and maxillofacial surgeon, for the possible extraction of an impacted wisdom tooth.[1] Dr. Schaffer had recently moved back to Louisiana from Mississippi, where he had voluntarily surrendered his Mississippi license to practice oral surgery as a result of a consent decree. However, he was licensed in Louisiana, but had not yet set up an office, when he saw Mrs. Cao. At the time, he was performing oral surgery in the offices of referring general dentists in the area. He kept no medical records and made all his entries relative to treatment in the records of the various dentists. His entries relative to her were in Dr. Do's chart.
Dr. Schaffer first saw Mrs. Cao in Dr. Do's office on October 12, 1995. Although Mrs. Cao speaks, reads and writes English, she required a translator to speak with Dr. Schaffer. Dr. Do acted as translator for Dr. Schaffer in order to assure that Mrs. Cao understood the procedure and the risks. Although a written consent for extracting the tooth was not obtained, Dr. Do and Dr. Schaffer testified that Dr. Schaffer's recited the risks of the surgery, including the possibility of nerve damage. Mrs. Cao denies being told that nerve damage is a risk of extraction. However, she consented at that time and Dr. Schaffer extracted the tooth. Mrs. Cao paid $100 by check, which was split between the two doctors. Following the surgery, neither doctor provided Mrs. Cao with post-surgery instructions, nor did Dr. Schaffer give her a telephone number where he could be reached in case of emergency. Although she received several prescriptions from Dr. Schaffer and Dr. Do in October and December of 1995, only two were noted in Dr. Do's chart. The chart also fails to record the medical necessity for the extraction.
Following the surgery, Mrs. Cao immediately experienced pain, bleeding, swelling and numbness on the right side. According to her, when she complained to Dr. Do, he told her that these complaints could last for a year. When she saw Dr. Schaffer on her follow-up visit on November 9, 1995, he noted in the chart that she had a resolution of right sided paresthesia and that she was doing well, except for diffuse pain on the right side. He felt that the numbness was improving. Dr. Schaffer saw Mrs. Cao again in another dentist's office in November or December of 1995. No notations in the chart were made of this visit and the date is unclear. According to Dr. Schaffer, he had difficulty communicating with her at that time and suggested that she return to Dr. Do, where he would examine her with Dr. Do translating. Her pain and the numbness continued to be a problem. An appointment with Dr. Schaffer was scheduled for December 14, 1995, but Mrs. Cao canceled because she had to go to California to take care of her sick mother. Dr. Schaffer had no further contact with her.
During the months that she was in California, Mrs. Cao sought no medical treatment and did not take any prescription drugs. However, she was still experiencing problems and, when she returned, her sister-in-law referred her to Dr. Richard Akin, another oral surgeon. Dr. Akin began treating her on April 19, 1996. In June of 1996, Dr. Akin performed surgery to attempt to repair nerve damage. The effort failed. Dr. Akin has continued to *1280 treat her and recommended further surgery in the future, as well as orthodontic work, to correct malocclusion. At the time of trial, she was wearing a splint and still experiencing complete anesthesia in the right lower jaw.
Mrs. Cao eventually filed a medical malpractice claim against Dr. Schaffer and Dr. Do. The Medical Review Panel hearing was held on December 9, 1999 and the panel found that Dr. Schaffer did not breach the standard of care in performing the extraction, but that he breached the standard of care in not obtaining written, informed consent. Later, at trial, two members of the panel revised their opinions that Mrs. Cao did not have informed consent because Louisiana law only requires verbal consent for dental procedures.
The Plaintiffs, Mrs. Cao and Mr. Cao Khan Cao (Mr. Cao), filed a petition for damages in the trial court on December 4, 1996 against Dr. Do, Dr. Schaffer, and AAMOS. In 2002, Dr. Schaffer's license to practice oral surgery in Louisiana was revoked for medical improprieties dating back to 1995, when he first moved to Louisiana. He was unlicensed at the time of the trial.
A jury trial was held on November 4-6, 2002. The jury found Dr. Do not liable and that Dr. Schaffer had obtained informed consent prior to treating Mrs. Cao. However, it further found that Dr. Schaffer failed to adhere to the applicable standard of care "in his treatment of the Plaintiff." Nevertheless, the jury found that Mrs. Cao did not suffer any damages "as a result of the procedure performed on October 12, 1995." The verdict was reduced to judgment on January 14, 2003.
On January 30, 2003, Mrs. Cao filed a motion for JNOV and alternatively for a new trial. After a hearing on March 31, 2003, the matter was taken under advisement. On June 6, 2003, the trial judge granted the motion for JNOV as to damages. He found that damages were warranted because the jury found "Dr. Schaffer's performance of the procedure was below the standard of care," the evidence stipulated medical expenses, the finding by the medical review panel that Mrs. Cao was not properly advised and informed of the risks of the surgery, and that she did not give her consent to the procedure. He awarded Mrs. Cao medical expenses of $18,813.75 and general damages of $7,000, for a total of $25,813.75, plus legal interest.
On appeal, the Defendants assert that the jury and trial judge erred in finding that Dr. Schaffer breached the standard of care. They further contend that the trial judge erred in admitting the evidence of the revocation of his dental license and excluding evidence of the findings of the panel. Third, they assert that the trial judge erred in granting the Plaintiffs' motion for JNOV.[2]

JUDGMENT NOTWITHSTANDING THE VERDICT[3]
A JNOV is warranted when facts and inferences point so strongly in favor of one party that reasonable men could not arrive at a contrary verdict, not merely *1281 when there is a preponderance of evidence for the mover. Joseph v. Broussard Rice Mill, Inc., 00-0628, p. 4 (La.1/30/00), 772 So.2d 94, 99; Mills v. Jaume, 02-668, p. 4 (La.App. 5th Cir.12/11/02); 836 So.2d 282, 285. If the evidence opposed to the motion is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Joseph, 00-0628 at 4, 772 So.2d at 99; Mills, 02-668 at 4, 836 So.2d at 285. In making the determination, we should not evaluate the credibility of witnesses and all reasonable inferences of factual questions should be resolved in favor of the non-moving party. Joseph, 00-0628 at 4, 772 So.2d at 99; Mills, 02-668 at 4, 836 So.2d at 285.

STANDARD OF CARE AND CAUSATION
The standard of care for a dentist licensed under R.S. 37:751 et seq. provides:
A. In a malpractice action based on the negligence of ... a dentist licensed under R.S. 37:751 et seq..., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by ..., dentists ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by ... dentists ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along *1282 with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
The Defendant asserts that the expert testimony at trial established that Dr. Schaffer did not breach the standard of care in performing the extraction or in his follow-up care. He contends that all of the experts testified that Mrs. Cao's complaints were accepted risks of the procedure that can occur even if the procedure is performed without incident.
The Medical Review Panel concluded that Dr. Schaffer did not breach the standard of care in extracting the tooth. Dr. Kimberly Meng and Dr. Akin concurred that there was no evidence that the extraction was not performed using the standard of care for that procedure. However, Dr. Akin testified at trial that Dr. Schaffer breached the standard of care for oral surgeons in other ways. He stated the requirements of the standard of care in the community as follows, that:
1. all contacts with the patient be charted;
2. a diagnosis be charted prior to any operation;
3. a written consent be obtained in connection with all surgeries;
4. postoperative care is the responsibility of the oral surgeon and the procedure should be in writing; and
5. the opportunity for referral to a neurosurgeon be explained to a patient in the Plaintiff's condition, where there is pain, swelling and numbness after an extraction, and that this referral should be done sooner than later.
Dr. Akin testified that Dr. Schaffer breached the standard of care first because he failed to obtain written consent for the procedure. The requirement of written consent as part of the standard of care for oral surgeons in the community was supported by the testimony of Dr. Meng, the Defendant's expert and a member of the Medical Review Panel and by the panel. In addition, AAMOS, recommends this practice to its insureds. However, written consent is not required by law, unless performed in a hospital. La.R.S. 40:1299.131.[4]
Dr. Akin also testified that an impacted wisdom tooth should not be extracted without a diagnosis by the oral surgeon that there is infection, cyst, periodontal involvement or swelling. Here, as reflected in the chart, neither Dr. Schaffer nor Dr. Do made a diagnosis for the extraction. Dr. Akin noted that Mrs. Cao suffers from malocclusion or incorrect bite on that same side. He inferred that this could have been the source of her pain. The notes in the chart simply state that she has pain in the tooth and wants it removed. Notably, the other wisdom tooth was also impacted, but has not been removed because it has not caused any pain or problems. Dr. Schaffer testified that he extracted the tooth because he suspected an infection.
Dr. Akin testified that Dr. Schaffer failed to provide follow up care to the Mrs. *1283 Cao. He failed to give her his telephone number, or a nurse's number (there was no nurse); he failed to give written instructions; he failed to take post-operative x-rays as a result of complaints of numbness; and he failed to chart the removal of stitches or the area of post-operative pain. Dr. Akin stated that Dr. Schaffer should have told Mrs. Cao what to expect post-surgically and after she began to complain of post-surgical pain and numbness, he should have told her that she could have a referral to a specialist if the condition did not improve. In effect, he contended that Dr. Schaffer abandoned Mrs. Cao, relying on Dr. Do to provide any post-surgical care.
Dr. Akin further testified that the notes made by Dr. Schaffer in November, stating that the numbness had resolved, were not credible. He said that Mrs. Cao told him that the numbness had never resolved at any time. Further, Dr. Akin stated that, when he examined Mrs. Cao, "she was as numb as this desk and it's (sic) simply not something that was going to progress. It's (sic) something that happened. The nerve was irreparably damaged at the time of the surgery and she was numb from the beginning and numb to the point that I saw her."
According to the testimony of the experts, the standard of care also requires that an oral surgeon refer a patient to a specialist as early as possible when there is suspected nerve injury. AAMOS also recommends to its insureds that oral surgeons refer the patient early. The evidence shows that Dr. Schaffer failed to refer Mrs. Cao at any time. However, Dr. Akin and Dr. Meng stated that the surgeon should follow the patient for a period of time before making the referral. If there is improvement, a referral is not necessary. Dr. Akin stated that the time period is approximately six to eight weeks. Dr. Meng stated that it can be as long as several months. The time delay is dependent on the particular case. However, the sooner the damage is discovered, the better the chances of repairing it, if it is repairable.
Dr. Aiken noted that Dr. Do and Dr. Schaffer ordered five pain prescriptions after the surgery, October 17, 20, 27, December 8 and 14, indicating that the problem persisted even after Dr. Schaffer's examination on November 9, 1995.
Dr. Schaffer testified that he saw Mrs. Cao less than one month after the extraction on November 9, 1995 and that his notes verify that she was improving, although she disagreed with this conclusion and he continued to order pain medications. Dr. Schaffer contends that when he examined Mrs. Cao on November 9, 1995, he performed a neurological examination that indicated that she could detect sharpness, dullness and direction in the area of her complaints. Thus, he felt that there was no necessity for a referral at that time. He saw her again on one occasion between that date and December 14, 1995 and Dr. Do was not there to translate. Next, she was rescheduled for a visit on December 14, 1995 in Dr. Do's office. That would have been six weeks from the extraction. Because of her mother's illness, she canceled the appointment. When she returned in April of 1996, six months after the extraction, she did not go back to him and went to Dr. Akin instead. Dr. Schaffer argues that accepting Dr. Akin's opinion of when to refer a patient, he was within the 6-8 week post-operation period when he saw her. Dr. Meng testified that it is appropriate to follow the patient and "map" the numbness which can be done by drawing a picture or describing the location of the numbness in the chart. Dr. Meng noted that Dr. Schaffer failed to map the area of numbness. *1284 However, Dr. Meng also stated that an oral surgeon would follow a patient up to three months before referring the patient to a specialist, especially if there is improvement. Thus, Dr. Schaffer argues that since Mrs. Cao was out of town during that period, he was not remiss in his follow-up care.
In order to recover in a dental malpractice case, the plaintiff must prove not only the dentists lack of knowledge or skill or failure to exercise the appropriate degree of care, but must also show that, as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care, she suffered injuries that would not otherwise have been incurred. The jury found that Dr. Schaffer breached the standard of care in the treatment of Mrs. Cao, but that she did not suffer any damages from the breach of the standard of care. We agree.
Mrs. Cao's damages in this case are numbness and pain caused by compression of the nerve that occurred during the surgery. That is a known risk of the extraction procedure and there was no evidence that Dr. Schaffer breached the standard of care in the actual extraction procedure. However, we recognize, as apparently the jury did, that Dr. Schaffer breached the standard of care in the follow-up treatment of Mrs. Cao in several administrative and recordation respects. Under the community standards, as testified by the expert witnesses, Dr. Schaffer neglected to obtain written consent for the procedure and neglected to chart a diagnosis for the extraction before he performed the procedure. His post-operative follow up was deficient by failing to give Mrs. Cao his telephone number, failing to give written instructions, failing to take post-operative x-rays as a result of complaints of numbness, failing to chart the removal of stitches, and failing to map the area of post-operative pain and numb area when he saw her in November of 1996. However, none of these must be construed as the proximate cause of the damages suffered by Mrs. Cao. Further, there is no evidence that these omissions contributed to the delay in her diagnosis of nerve compression or that the numbness and pain could have been alleviated by an early detection of the damage.
In that regard, Dr. Schaffer treated Mrs. Cao up until December 14, 1995, the last scheduled appointment that she canceled. That was two days more than two months from the procedure. Then, she left town for several months, so he had no further opportunity to follow her progress. Thus, Dr. Schaffer's post-surgery contact with Mrs. Cao was well within the time period that an oral surgeon should follow the patient before referring to a specialist, which is anywhere from four weeks to four months, according to Dr. Akin and Dr. Meng. The delay in Mrs. Cao's obtaining treatment for the nerve damage was due to her absence from the area, not from Dr. Schaffer's actions. Thus, we conclude that Dr. Schaffer, for all of his negligence in his administrative and recordation conduct, did not breach the standard of care in respect to a timely referral to a specialist, and thus, none of the administrative or recordation omissions were a proximate cause of her damages.
Dr. Schaffer apparently also failed to inform Mrs. Cao, before or when she canceled the December 14, 1995 appointment with him, that her condition needed to be monitored because of possible nerve damage. We find that this failure to so inform her is also a breach of the standard of care for an oral surgeon. But, Mrs. Cao did not prove by a preponderance of the evidence that had she known and sought *1285 an earlier referral, that it would have mitigated or prevented the nerve damage. Dr. Akin testified that if a Computerized Axial Tomography (CT) scan had been taken as soon as possible showing a nerve compression, he would have been "tempted to go in and relieve the pressure." However, he did not state that it would have made a difference, only that it is better to refer a patient "earlier than later." At one point in his testimony Dr. Aiken stated that the nerve was irreparably damaged at the time of the surgery. Thus, neither Dr. Akin nor any other expert testified that it was more likely than not that early discovery of the condition would have prevented or mitigated Mrs. Cao's damages from the compressed nerve. Thus, Mrs. Cao failed to bear her burden of proof that, even if there was an unreasonable delay in referring her to a specialist, that delay was the proximate cause of her damages.
In light of these findings, we conclude that the standard for granting a JNOV was not met in this case since the facts and inferences do not point so strongly in favor of one party that reasonable men could not arrive at a contrary verdict. Joseph, 00-0628 at 4, 772 So.2d at 99; Mills, 02-668 at 4, 836 So.2d at 285. Thus, the trial judge erred in granting the JNOV as to damages. We will, therefore, reverse the ruling of the trial judge in the JNOV, vacate the JNOV, and reinstate the jury verdict.
Dr. Schaffer further asserts that the trial judge erred in allowing evidence of the revocation of his Louisiana license for violations going back to 1995, without allowing a portion of the decision exonerating him in relation to allegations relating to Mrs. Cao. However, without commenting on the admissibility of that document, we find no error in the finding by the jury that Dr. Schaffer violated the standard of care in his treatment of Mrs. Cao's condition. The evidence in this case was replete with instances of his disregard for his duty to provide post-surgical instructions to Mrs. Cao and to comply with his administrative and recordation duties in his treatment of her condition.
Finally, we note that Mrs. Cao moved for a new trial as an alternative to her motion for JNOV. The trial court's judgment granting a JNOV, however, did not address her alternative request for a new trial, as required by art. 1811. Nevertheless, we need not send this case back to the trial court for it to rule on the motion for new trial, as "sending this matter back to the trial court would be contrary to the concept of judicial economy and the interest of the parties in having this longstanding lawsuit concluded." VaSalle v. Wal-Mart Stores, Inc., 01-0462, p. 18 (La.11/28/01), 801 So.2d 331, 342. Like the Court in VaSalle, we have concluded that the jury's verdict is reasonable in light of the evidence presented and, thus, the Plaintiff is not entitled to a new trial. We therefore deny the request for a new trial.
Accordingly, the JNOV is hereby vacated, the new trial is denied and all other rulings are affirmed. The jury verdict is hereby reinstated. Each party shall bear his/her costs of appeal.
JNOV VACATED; NEW TRIAL DENIED; JURY VERDICT REINSTATED.
NOTES
[1] The impacted tooth was number 32, commonly known as a third molar or wisdom tooth.
[2] No judgment was rendered as to Mr. Cao and he has not appealed that omission. Thus, we will refer to the Plaintiff in the singular. We also refer to Dr. Schaffer as the Defendant in the singular, although the insurer is also a party.
[3] La. C.C.P. art. 1811 provides for the JNOV, as follows:

A.(1) Not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice of judgment under Article 1913, a party may move for a judgment notwithstanding the verdict. If a verdict was not returned, a party may move for a judgment notwithstanding the verdict not later than seven days, exclusive of legal holidays, after the jury was discharged.
(2) A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.
B. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or render a judgment notwithstanding the verdict. If no verdict was returned, the court may render a judgment or order a new trial.
C. (1) If the motion for a judgment notwithstanding the verdict is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.
(2) If the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise.
(3) If the motion for a new trial has been conditionally denied and the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.
D. The party whose verdict has been set aside on a motion for a judgment notwithstanding the verdict may move for a new trial pursuant to Articles 1972 and 1973. The motion for a new trial shall be filed no later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice of the signing of the judgment notwithstanding the verdict under Article 1913. The motion shall be served pursuant to Articles 1976 and 1314.
E. If the motion for a judgment notwithstanding the verdict is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for a judgment notwithstanding the verdict. If the appellate court reverses the judgment, nothing in this Article precludes the court from determining that the appellee is entitled to a new trial or from directing the trial court to determine whether a new trial shall be granted.
F. The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues.
[4] La. R.S. 40:1299.131 F. provides:

It shall not be essential to the validity of any informed consent that the consent be obtained in writing. Where consent to dental treatment by the patient or consent to dental treatment... is secured other than in writing in accordance with Paragraph C of this Section, the explanation to the patient or person authorizing consent for the patient shall include the matters set forth in Paragraphs B(1) and B(2) of this Section, such consent shall be valid, effective, and subject to proof according to the rules of evidence of ordinary cases.