NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-14

PANFILO CARRILLO

VERSUS

BILLY W. DAVID, ET AL.

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-661-13
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.

AMENDED AND AFFIRMED AS AMENDED.

Jennifer A. Jones
Jones Law Firm
Post Office Box 1550
Cameron, LA 70631
(337) 775-5714
COUNSEL FOR PLAINTIFF-APPELLANT:
    Panfilo Carrillo

**Wilbert Saucier, Jr.**
**Saucier Law Firm**
**2220 Shreveport Highway**
**Pineville, LA 71360**
**(318) 473-4146**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
**Panfilo Carrillo**

**Harold J. Eisenman, P.C.**
**2603 Augusta Drive, Suite 1025**
**Houston, TX 77057**
**(713) 840-7180**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
**Panfilo Carrillo**

**Michael R. Sistrunk**
**Matthew J. Garver**
**Lou Anne Milliman**
**McCranie, Sistrunk, Anzelmo, Hardy, McDaniel & Welch**
**195 Greenbriar Boulevard, Suite 200**
**Covington, LA 70433**
**(504) 831-0946**
**COUNSEL FOR DEFENDANTS-APPELLANTS:**
**Billy W. David**
**The Town of Welsh**
**Southern Insurance Company**

**PICKETT, Judge.**

The plaintiff and defendants appeal the trial court's judgment denying their motions for judgment notwithstanding the verdict (JNOV). As discussed below, we amend the jury's award of damages for past pain and suffering and affirm the remainder of the judgment.

## FACTS

On October 6, 2012, Billy W. David, a police officer for the Town of Welsh, entered Interstate Highway 10 traveling east via an entrance ramp in Welsh in response to a call for assistance on the westbound lanes of the highway. Officer David entered the highway traveling east to access a median crossing situated approximately three miles east of the entrance ramp. He needed to cross the median to provide assistance to a westbound traveler.

Upon entering the highway, Officer David traveled directly from the entrance ramp to the left lane of the eastbound traffic. Officer David's car entered the left lane where Lee Celestine was driving a Toyota Camry. Mr. Celestine blew his horn to warn Officer David of his presence, but Officer David did not heed the warning. To avoid a collision between the two cars, Mr. Celestine steered the Toyota to the left. Due to the narrow width of the left shoulder, the tires on the left side of the Toyota left the paved portion of the highway. The embankment of the median has a steep slope, and when the left tires of the Toyota left the highway, Mr. Celestine lost control of the Toyota which traveled into the median. Mr. Celestine was unable to regain control of the Toyota. It then reentered the eastbound lanes of the highway and came to a stop with the front half of the car in the left lane perpendicular to the highway.

Mr. Celestine testified that when the Toyota stopped, he looked up and saw an eighteen-wheeler coming at the car. The eighteen-wheeler hit the front right bumper, causing the rear portion of the Toyota to whip back and hit the truck near the driver's door. The Toyota then spun into the median again and where it came to rest.

Mr. Celestine's sister, Della Butler, was in the front passenger seat of the Toyota. Ms. Butler's description of the accident mirrored Mr. Celestine's description. Their testimonies indicate the Toyota was hit by the eighteen-wheeler only seconds after it came to rest on the highway.

Before Officer David entered the highway, Panfilo Carrillo was driving a eighteen wheeler in the right eastbound lane of the highway. As he approached the overpass before the entrance ramp, Mr. Carrillo observed Officer David on the entrance ramp. He testified that he moved to the left lane behind the Toyota as a courtesy to the officer. He continued to travel in the left lane and observed Officer David's vehicle nearly collide with Mr. Celestine's Toyota. Mr. Carrillo testified that he took his foot off the accelerator when Officer David's vehicle approached the Toyota in the left lane then applied his brakes when he saw the Toyota coming back toward the highway. He further testified that he hit his brakes hard approximately twenty yards or less before striking the Toyota.

Mr. Carrillo explained that he did not expect the Toyota to return to the highway after it entered the median. He also explained that he could only reduce his speed when he saw the Toyota reentering the highway because it was impossible for him to stop his truck in time to avoid a collision. He did not believe he had time to look in his mirrors and attempt to change lanes before the collision.

After the accident, Mr. Carrillo pulled over to the right shoulder of the highway and waited for the police to arrive on the scene.

Officer David was not aware that he had caused an accident. When he looked in his rear view mirror, he saw the Toyota in the median and pulled to the right shoulder of the highway to render assistance. The jury viewed the video from Officer David's front dash camera that showed his actions when he entered the highway. Officer David called the Louisiana State Police and an ambulance. Louisiana State Police Trooper Steven Vincent investigated the accident; he cited only Officer David in connection with the accident.

Mr. Carrillo filed suit against Officer David, the Town of Welsh, and Southern Insurance Company, the Town's insurer, seeking damages for injuries he sustained in the accident.[1] After a trial, the jury awarded Mr. Carrillo the following damages:

| | |
|---|---|
| Past medical expenses | $ 30,493.04 |
| Future medical expenses | $ 0 |
| Past Pain & Suffering | $ 25,000.00 |
| Future Pain & Suffering | $ 25,000.00 |
| Past Loss of Enjoyment of Life | $ 0 |
| Future Loss of Enjoyment of Life | $ 0 |
| Past Loss of Income & Earning Capacity | $ 5,000.00 |
| Future Loss of Income & Earning Capacity | $ 0 |

---

[1] Ms. Butler also filed suit against the defendants, Mr. Carrillo, and his employer, seeking damages for injuries she sustained in the accident. She settled her claims before trial and dismissed her lawsuit.

Mr. Carrillo and the defendants filed motions for JNOV. In his motion for JNOV, Mr. Carrillo sought awards for future medical expenses and past and future loss of enjoyment of life. He also sought an increase in his awards for past and future pain and suffering. In their motion, the defendants sought an assessment of fault to Mr. Carrillo. The trial court refused to grant the relief sought by the parties in their motions on the basis that the jury's verdict is supported by the evidence. The parties now appeal the trial court's denial of their motions for JNOV.

## ASSIGNMENTS OF ERROR

Mr. Carrillo assigns the following three errors with the trial court's judgment:

1. In the accident which forms the subject of this case, the Plaintiff/Panfilo Carrillo's treating physician testified that, to a reasonable degree of medical certainty, Mr. Carrillo sustained three herniated discs and would require spinal surgery in the future. Mr. Carrillo testified that he was willing to undergo surgery, yet the jury made no award for future medical expenses, and the trial court declined to grant Plaintiff's [m]otion for [JNOV] as to this element of damages. Was this error?

2. The Plaintiff/Appellant Mr. Carrillo testified that he had experienced pain every day since his accident of October 6, 2012. Yet the jury awarded only $25,000 for past pain and suffering and $25,000 for future pain and suffering, and the trial judge declined to grant Plaintiff's [m]otion for [JNOV] as to this element of damages. Was this error?

3. In the face of the above-referenced testimony, the jury made no award whatsoever for past or future loss of enjoyment of life, and the trial judge declined to grant Plaintiff's [m]otion for [JNOV] as to this element of damages. Was this error?

The defendants assign one error with the trial court's judgment:

1. The trial court erred in failing to assess any fault for the accident to Mr. Carrillo, because Mr. Carrillo acknowledged that he was following another vehicle too closely, the accident would not have

4

occurred but for his actions, and defendants' accident reconstruction expert opined that Carrillo breached his duty of care which led to the accident at issue.

## STANDARD OF REVIEW

Louisiana Code of Civil Procedure Article 1811 authorizes a party to move for JNOV. "[A] JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict." *Joseph v. Broussard Rice Mill, Inc.*, 00-628, p. 4 (La. 10/30/00), 772 So.2d 94, 99. Only if the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions should a JNOV be granted. *Id.* JNOV is not proper when there is merely a preponderance of evidence in favor of the mover. *Id.* If the evidence is such that "reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions," JNOV should be denied. *Id.* at 99. When considering a motion for JNOV, "the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party." *Id.* Appellate courts review the denial of a JNOV to determine whether the record reveals legal error or whether the trier of fact committed manifest error. *Hutto v. McNeil-PPC, Inc.*, 11-609 (La.App. 3 Cir. 12/7/11), 79 So.3d 1199, *writ denied*, 12-402 (La. 4/27/12), 86 So.3d 628, *cert. denied*, __ U.S. __, 133 S.Ct. 428 (2012).

## DISCUSSION

Mr. Carrillo stated at the scene of the accident that he was not injured. However, he began experiencing severe pain in his lower back the day after the accident. Mr. Carrillo also experienced neck pain, but it was not as severe as his back pain. He sought medical treatment on October 8, 2012, the Monday after the

5

accident at a medical clinic. The medical clinic referred him to the Bruce Chiropractic Rehabilitation Clinic, where he received treatment approximately twice a week until February 2013, when he was released from the clinic's care. Mr. Carrillo was treated with massage, heat, stretching exercises, and other treatments aimed at relieving his pain.

Dr. Mitchell McKean treated Mr. Carrillo at the Bruce Chiropractic Rehabilitation Clinic and ordered MRIs of his neck and lower back which were performed on October 20, 2012. Dr. Sandeep Amesur, the radiologist who read the MRI films, opined that they showed a central disc herniation at C3-4 and C4-6 with an element of borderline central stenosis at each level and a circumferential disc bulge at L2-3. Dr. McKean referred Mr. Carrillo to Dr. Stephen Esses, an orthopedic surgeon who limits his practice to the treatment of spines, for a consultation. Dr. Esses first saw Mr. Carrillo on November 19, 2012. He examined Mr. Carrillo and reviewed his MRIs. He ordered an epidural steroid injection to relieve Mr. Carrillo's back pain which Mr. Carrillo received on February 13, 2013. The injection relieved Mr. Carrillo's pain, and Dr. McKean discharged Mr. Carrillo from his care on March 14, 2013. Dr. McKean instructed Mr. Carrillo to continue his home exercises and to return for further treatment if his pain worsened or changed in any way.

On April 26, 2013, Mr. Carrillo was in another accident with an automobile. Mr. Carrillo testified that there was only a slight scraping of his truck and the other vehicle when the driver of the other vehicle entered the roadway he was traveling and immediately attempted to make a U-turn. He further testified that the accident did not aggravate his back pain or cause any of the injuries and that he did not need to seek medical attention as a result of the accident.

Mr. Carrillo returned to Dr. Esses on October 7, 2013. At that time, he had normal range of motion in his neck but complained that his February 2013 steroid injection provided only temporary relief of his lower back pain. He explained that after the temporary relief waned, his lower back pain progressively worsened and that he also had pain radiating into both of his legs, as well as numbness in his lower legs. Mr. Carrillo reported to Dr. Esses that he experienced difficulty walking and that he could not walk one city block without pain.

Dr. Esses ordered another MRI of Mr. Carrillo's back. The MRI was performed on November 1, 2013. Dr. Amesur reviewed the MRI; he identified a circumferential disc bulge at L2-3 and a "[r]ight far lateral/right foraminal disc herniation at L4-L5" that has "[p]ossible contact with the exiting right L4 nerve." On December 6, 2013, Mr. Carrillo received a second epidural steroid injection in his lower back. He returned to Dr. Esses on April 20, 2014, and reported that the injection relieved his back pain only temporarily. Dr. Esses informed Mr. Carrillo that the only other treatment he can offer him is surgery, but only Mr. Carrillo can determine whether he needs the surgery.

In his trial deposition, Dr. Esses opined that Mr. Carrillo suffered a soft-tissue injury in his neck and three herniated discs at L2-3, L3-4, and L4-5 in his lumbar spine as a result of the accident. He testified that the neck injury was resolved by February 2013. He then explained that the bulge of the L2-3 disc was not degenerative because there were no other degenerative changes, such as decreased disc space height, decreased signal intensity, or a radial annular tear, present at that level. Dr. Esses further explained that a disc herniation would not necessarily show on an MRI two weeks after an accident because it can involve a process that occurs over time.

Dr. Esses presented an animated representation of a spine that, in his opinion, represented the condition of Mr. Carrillo's lower spine. He explained that Mr. Carrillo's lower back pain and the pain or numbness in his legs that worsened when he walked was indicative of neural claudication which is almost always the result of irritation of or pressure on the nerves from the back to the lower legs. Dr. Esses opined that the MRI and Mr. Carrillo's complaints and symptoms indicate pressure on nerves at one or more levels in his back. At the least, he believed there was irritation or inflammation of those nerves.

In Dr. Esses's opinion, Mr. Carrillo will need surgery in five to ten years as a result of the damage caused by the accident to the discs at L2-3, L3-4, and L4-5. He explained that Mr. Carrillo will require a one to three level discectomy and possibly a fusion. He recommended that Mr. Carrillo hold off having a fusion as long as possible because it is a more complicated surgery that requires a much longer recovery and changes the biomechanics of the back permanently. Dr. Esses testified that the least complicated surgery, a microdiscectomy, will cost $45,000.00 and the most complicated surgery, which includes a fusion, will cost $150,000.00. He also detailed the limitations Mr. Carrillo can expect if he has any of the surgeries he discussed.

Dr. Everett Robert, a neurosurgeon, examined Mr. Carrillo and his medical history at the request of the defendants to render a second opinion regarding injuries Mr. Carrillo suffered as a result of the accident. Seventy percent of Dr. Robert's practice pertains to treatment of the spine. Dr. Robert opined the MRIs of Mr. Carrillo's back showed no objective evidence of damage related to the accident. He testified that the L2-3 disc identified in the October 20, 2013 MRI was a degenerated disc that was not related to the October 6, 2013 accident. He

8

explained that the darkness of the L2-3 disc shown on the first MRI represents change that takes years to occur and could not have occurred in the two weeks between the accident and the MRI. He also stated that all of Mr. Carrillo's discs showed degenerative changes which are to be expected in a man of his age. Dr. Robert further explained that a central herniation at L2-3 could not be responsible for Mr. Carrillo's back pain and leg numbness because the herniation was too small and does not contact the nerve roots. He determined the herniation at L4-5 was not consistent with Mr. Carrillo's bilateral leg pain and numbness because the herniation was to the far right lateral side of the disc on the right; therefore, it could not be causing numbness in Mr. Carrillo's left leg.

During his deposition, Dr. Robert reviewed and compared for the jury animated versions of Mr. Carrillo's two MRIs. He explained that the two MRIs were essentially the same and that the condition of Mr. Carrillo's lumbar spine had not changed between the October 20, 2012 MRI and the November 1, 2013 MRI.

Counsel for Mr. Carrillo asked Dr. Robert if he could explain why his opinion was so different from Drs. Esses and Amesur's opinions. Counsel also questioned if Dr. Robert had both of Mr. Carrillo's MRIs or possibly just two copies of the first MRI. Dr. Robert admitted he did not know why his opinion was so different from the other doctors' opinions; however, he identified a number of differences, e.g., the dates and times, and the contents of Mr. Carrillo's stomach, between the two MRI films to establish that he viewed both of the MRIs and not two copies of the same MRI. Ultimately, Dr. Robert testified that in his opinion Mr. Carrillo is not a surgical candidate. He opined that complaints of back pain and leg pain as described by Mr. Carrillo indicate joint and nerve root problem, not a disc problem.

*Intervening Accident*

Mr. Carrillo contends the jury's awards for past and future pain and suffering are abusively low and urges that the awards constitute error because the jury improperly considered his involvement in the April 2013 accident when making these awards. Citing *Clement v. Citron*, 13-63 (La.App. 3 Cir. 6/19/13), 115 So.3d 1260, Mr. Carrillo argues the jury's reliance on the defendants' assertion that his involvement in a second motor vehicle accident on April 26, 2013, account for his increased complaints of pain and additional medical treatment constitutes legal error. Accordingly, he contends we must review the trial court's denial of his motion for JNOV de novo.

In *Clement*, this court reiterated that a defendant's attempt "to cast doubt on the causal link between the subject accident and the plaintiff's injuries" by simply establishing that the plaintiff was involved in a second accident and suggesting that the second accident is responsible for the plaintiff's injuries is "insufficient to deflect causation." *Id*. at 1266. This court held in *Turner v. Nationwide Insurance Co.*, 503 So.2d 734, 737 (La.App. 3 Cir. 1987), that "conjecture and possibility is insufficient to prove an intervening cause; such intervening cause must be proven by a preponderance of the evidence."

Mr. Carrillo testified in detail about the pain in his lower back and the pain radiating from his back down his legs and into his feet. He also testified that he could not let his pain stop him from working because he had a family to support. Mr. Carrillo received two steroid injections for his back pain but did not take over-the-counter or prescription pain medication until it was prescribed for him by his family physician approximately six months before trial. He did not seek regular

medical treatment for his back pain for one and one-half years after being released by Dr. McKean in 2013.

Dr. Robert controverted Dr. Esses's opinion that Mr. Carrillo suffered three herniated discs as result of the October 2012 accident. Each doctor used demonstrative evidence to support his opinion. Dr. Esses used a diagram of a back with three herniated discs that he stated represented his opinion of what Mr. Carrillo's second MRI showed to explain to the jury that Mr. Carrillo had three herniated lumbar discs that were causing his back pain and the pain radiating down his legs. Dr. Robert used the actual MRI film of Mr. Carrillo's back to detail his opinion that no disc in Mr. Carrillo's back was herniated. Mr. Carrillo notes that Dr. Robert admitted it was possible he could have been given the wrong film of Mr. Carrillo's second MRI. He did not, however, present any evidence at trial to establish that Dr. Robert had the wrong MRI film and that his opinion was erroneous for that reason.

As the trier of fact, the jury had to make credibility determinations when considering the testimony of each witness, including expert witnesses. *Sportsman Store of Lake Charles, Inc. v. Sonitrol Sec. Sys. of Calcasieu, Inc.,* 99-201 (La. 10/19/99), 748 So.2d 417. It was the jury's prerogative to accept or reject, in whole or in part, expert opinions. *Lirette v. State Farm Ins. Co.*, 563 So.2d 850 (1990.

We need not address Mr. Carrillo's argument on this issue because the jury could have concluded from Dr. Robert's testimony that no discs in Mr. Carrillo's back were herniated and that he will not require any surgery as a result of the October 6, 2012 accident. Therefore, the record does not establish that the jury

based any damage awards on the fact that Mr. Carrillo was involved in a second accident in April 2013.

### *Future Medical Expenses*

Mr. Carrillo assigns error with the jury's failure to award him future medical expenses. He contends that because Dr. Esses testified he had three herniated discs and would require surgery in the future and he testified that he is willing to undergo surgery, the trial court erred in declining to award him future medical expenses.

To be entitled to an award of future medical expenses, Mr. Carrillo had to prove more probably than not that the expenses were necessitated by the accident, "the probable cost of these expenses[,]" and that "these expenses will be incurred[.]" *Guidry v. Allstate Ins. Co.*, 11-517, p. 8 (La.App. 3 Cir. 12/21/11), 83 So.3d 91, 99, *writ denied*, 12-225 (La. 3/30/12), 85 So.3d 121.

As discussed above, the record does not establish that the jury's decision to give greater weight to Dr. Robert's opinion than to Dr. Esses's opinion is unreasonable. It was for the jury, not this court, to evaluate the testimony of Mr. Carrillo, the medical evidence, and the opinions of Drs. Robert and Esses to determine whether Mr. Carrillo proved his claim for future medical expenses. Reasonable persons could reach the same conclusion the jury reached. Accordingly, we cannot say the trial court erred in denying Mr. Carrillo's motion for JNOV on this issue.

### *Pain and Suffering*

Mr. Carrillo next argues that the jury's awards of $25,000.00 for past pain and suffering and $25,000.00 for future pain and suffering constitute error in light of his continuous complaints of pain and suffering.

12

The jury's determination of the amount to award in damages is a finding of fact. *Rando v. Anco Insulations Inc*., 08-1163, 08-1169 (La. 5/22/09), 16 So.3d 1065. On appellate review, the initial inquiry regarding an award of damages is whether the award for the particular injuries and their effects upon the particular injured person is a clear abuse of the trier of fact's great discretion. *Id*. Only if a detailed analysis of the facts shows the award to be an abuse of discretion can the award be considered either excessive or insufficient. *Id*. We review the jury's exercise of discretion, not decide the damage award we believe would be appropriate. *Youn v. Maritime Overseas Corp*., 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994).

Mr. Carrillo suffered a soft tissue injury to his neck and back pain as a result of the accident. The neck injury resolved in six months, but Mr. Carrillo continued to suffer back pain. Considering the period of time between the date of the accident and the trial, as well as the fact that Mr. Carrillo's back pain was so severe for a period of time that he required regular chiropractic treatment and could not work, we conclude the jury committed manifest error in awarding Mr. Carrillo only $25,000.00 for past pain and suffering. Accordingly we increase the award to $50,000.00.

We find no inconsistency between the jury's failure to award future medical expenses but awarding future pain and suffering. The evidence is such that the jury could have concluded: (1) Mr. Carrillo's profession as a truck driver would cause him to suffer back pain related to the injuries he suffered in the October 2012 accident in the future, but those injuries do not require surgery and/or (2) not all future pain and suffering will be related to the October 2012 accident.

13

For these reasons, we increase the jury's award of past pain and suffering to $50,000.00. We cannot say, however, the jury abused its discretion in awarding Mr. Carrillo $25,000.00 for his future pain and suffering.

*Loss of Enjoyment of Life*

Loss of enjoyment of life "refers to the detrimental alterations of the person's life or lifestyle or the person's inability to participate in the activities or pleasures of life that were formerly enjoyed." *McGee v. A C & S, Inc.*, 05-1036, p. 5 (La. 7/10/06), 933 So.2d 770, 775.

As noted by the defendants, Mr. Carrillo testified that his back pain and the radiating pain down his legs did not affect his life or lifestyle. He explained that because his employment as a truck driver required him to work six days a week, he did not have any hobbies before the accident and that, before and after the accident, when he was not working, the only activity he engaged in was watching television. He did not complain that his injuries had a negative impact on his family life. Mr. Carrillo did testify, however, that his injuries caused him to change jobs because he could not drive long distances as he had before the accident due to the pain in his back and legs increasing the longer he drove. That change allowed him to be home at night with his family rather than traveling.

With only this evidence supporting his claims for past and future loss of enjoyment of life, we cannot say the jury abused its discretion in not awarding Mr. Carrillo damages for past and future loss of enjoyment of life.

*Assessment of Fault*

In their sole assignment of error, the defendants contend the trial court erred in failing to grant its motion for JNOV and assess Mr. Carrillo with fault. Mr. Celestine, Ms. Butler, and Mr. Carrillo described to the jury how the events

14

unfolded on October 6, 2012, and the jury was able to view how those events occurred on Officer David's dash camera video.

The defendants point to Mr. Carrillo's testimony that immediately before the accident, he was following the Toyota closer than stated in the regulations he is obliged to follow as a commercial truck driver. The defendants also presented the testimony of an accident reconstruction expert, Robert Rucoba, to establish that Mr. Carrillo's actions were a factor in causing the accident. Mr. Rucoba opined that if Mr. Carrillo had remained in the right lane of the highway when he saw Officer David preparing to enter the highway instead of moving to the left lane behind the Toyota, the accident would not have happened. He also testified that Mr. Carrillo was following the Toyota too closely when he moved from the right lane to the left lane and explained that if Mr. Carrillo had not been following so closely, he could have avoided the accident.

The apportionment of fault is a factual determination which can only be disturbed if it is clearly wrong or manifestly erroneous. *Clement v. Frey*, 95-1119, 95-1163 (La. 1/16/96), 666 So.2d 607. The assessment of fault is guided by the factors set forth in *Watson v. State Farm Fire & Casualty Insurance Co.*, 469 So.2d 967 (La.1985), where the supreme court outlined various factors that influence the percentage of fault assigned to the parties:

> whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.

*Id.* at 974.

Our review of the evidence shows the jury did not commit manifest error in accepting the testimony of the parties involved, over Mr. Rucoba's testimony, that the accident happened so quickly the collision of Mr. Carrillo's eighteen-wheeler with the Toyota was unavoidable. A jury "may substitute common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole." *Green v. K-Mart Corp.*, 03-2495, p. 5 (La. 5/25/04), 874 So.2d 838, 843.

The evidence establishes Officer David was completely unaware of the danger he created when he entered the highway and moved directly to the left lane and that his actions and lack of awareness created a great risk to the motoring public that could not be completely appreciated by Mr. Carrillo within the few seconds during which the accident occurred. The evidence further establishes that Officer David was not responding to an emergency; therefore, his conduct was no more important or significant than the safe travel of the motoring public. Finally, Officer David's capacity to safely enter and travel the highway was significantly superior to Mr. Carrillo's capacity to respond to the emergency situation Officer David created which resulted in the Toyota unexpectedly reentering the highway.

The defendants contend that Mr. Carrillo's failure to follow the Toyota at a distance of 700 feet or more was a cause-in-fact of the accident; therefore, he should be assessed with fault. In *Hutto*, 79 So.3d at 1213, this court explained the concept of cause-in-fact:

> A cause is a legal [cause-in-fact] if it has a proximate relation to the harm which occurs. *Butler v. Baber*, 529 So.2d 374 (La.1988). "A proximate cause is generally defined as any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred." *Sutton v. Duplessis*, 584 So.2d 362, 365 (La.App. 4 Cir.1991). If there is more than one cause

16

of injury, "a defendant's conduct is a cause-in-fact if it is a substantial factor generating plaintiff's harm." *Rando*[, 16 So.3d at 1088]. Causation is an issue of fact subject to the manifest error standard of review. *Id*.

We find no error with the jury's conclusion that Mr. Carrillo's actions were not a cause-in-fact of his collision with the Toyota. It was reasonable for the jury to conclude that Mr. Carrillo's manner of driving did not contribute in any manner to the occurrence of the accident. He could not have reasonably anticipated that Officer David would enter the highway and immediately create a hazard for the traffic in the left lane. Importantly, there is no evidence Mr. Carrillo could have or should have anticipated that the Toyota would reenter the highway after it entered the median. That event was caused solely by Officer David.

For these reasons, we find the trial court did not err in denying the defendants' motion for JNOV.

## DISPOSITION

For the reasons discussed herein, the judgment of the trial court denying the motions for judgment notwithstanding the verdict filed by Panfilo Carrillo and Billy W. David, the Town of Welsh, and Southern Insurance Company is amended to increase the award of damages for past pain and suffering to $50,000.00; the judgment is affirmed in all other respects. All costs are assessed to Billy W. David, the Town of Welsh, and Southern Insurance Company.

**AMENDED AND AFFIRMED AS AMENDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.

17